UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULUALOFAIGA MANU, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GAT AIRLINE GROUND SUPPORT, INC., and DOES 1–50, inclusive,<br><br>Defendants. | No. 2:23-cv-01988-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Plaintiff Ulualofaiga Manu's (Plaintiff) Motion to Remand. (ECF No. 15.) Defendant Gat Airline Ground Support, Inc. (Defendant) filed an opposition. (ECF No. 16.) Plaintiff filed a reply. (ECF No. 18.) For the reasons set forth below, the Court DENIES Plaintiff's motion.

///

///

///

///

///

///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant, an aviation services company, employed Plaintiff as a non-exempt ramp agent from approximately December 2022 to April 2023. (ECF No. 1-1 at 6.) On June 20, 2023, Plaintiff filed the instant class action against Defendant, alleging violations of the California Labor Code and California Business and Professions Code in the Sacramento County Superior Court. (*Id*. at 2.) Plaintiff alleges Defendant: (1) failed to pay all minimum wages; (2) failed to pay all overtime wages; (3) did not provide requisite meal periods; (4) did not provide requisite rest periods; (5) failed to pay necessary business expenses; (6) failed to timely pay all compensation due and owing upon discharge; (7) provided inaccurate wage statements; and (8) engaged in unfair competition. (*Id*.)

On September 14, 2023, Defendant removed the instant class action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (ECF No. 1.) Defendant alleges the instant class action meets CAFA's requirements of class size, minimal diversity, and the amount in controversy. (*Id*. at 4.) On January 18, 2024, Plaintiff filed the instant motion to remand in which Plaintiff only contests Defendant's asserted amount in controversy. (ECF No. 15 at 11.)

## II. STANDARD OF LAW

A civil action brought in state court, over which the district court has original jurisdiction, may be removed by the defendant to federal court in the judicial district and division in which the state court action is pending. 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if: (1) the class has more than 100 members; (2) any member of the class is diverse from the defendant; and (3) the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B).

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). As a general rule, removal statutes are to be strictly construed against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). However, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). Nonetheless, "[i]f at any time before final

1 judgment it appears that the district court lacks subject matter jurisdiction, the case shall be
2 remanded" to state court.  28 U.S.C. § 1447(c).
3      A defendant seeking removal under CAFA must file in the federal forum a notice of
4 removal "containing a short and plain statement of the grounds for removal."  *Dart Cherokee*, 574
5 U.S. at 83 (quoting 28 U.S.C. § 1446(a)).  The notice of removal "need not contain evidentiary
6 submissions," but rather a defendant's "plausible allegation that the amount in controversy
7 exceeds the jurisdictional threshold" suffices.  *Id*. at 84, 89.  When "a defendant's assertion of the
8 amount in controversy is challenged ... both sides submit proof and the court decides, by a
9 preponderance of the evidence, whether the amount-in-controversy requirement has been
10 satisfied."  *Id*. at 88.  "The parties may submit evidence outside the complaint, including
11 affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in
12 controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm*
13 *Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).
14      "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy
15 its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable
16 ones."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).  "CAFA's
17 requirements are to be tested by consideration of real evidence and the reality of what is at stake
18 in the litigation, using reasonable assumptions underlying the defendant's theory of damages
19 exposure."  *Ibarra*, 775 F.3d at 1198.  Then, "the district court must make findings of
20 jurisdictional fact to which the preponderance standard applies."  *Dart Cherokee*, 574 U.S. at 89
21 (internal citation omitted).

22 **III.    ANALYSIS**

23      Plaintiff argues Defendant has not proven the amount in controversy exceeds $5,000,000
24 by a preponderance of the evidence.  (ECF No. 15 at 11.)  Specifically, Plaintiff argues
25 Defendant's calculations "are inaccurate as they rely on speculative violation rates, and
26 improperly account for employees who have released their claims against Defendant" in *Nelson*
27 *Gonzalez v. GAT Airline Ground Support, Inc.*, Los Angeles County Superior Court, Case No.
28 20BBCV00548 — a separate but related wage and hour class action against Defendant.  (*Id*. at 12.)

3

1   In opposition, Defendant argues the settlement in *Gonzalez* (the "*Gonzalez* Settlement") has no
2   impact on the amount in controversy in the instant action.  (ECF No. 16 at 8.)  Defendant also
3   argues its amount in controversy calculations are "supported both by the weight of the case law
4   and Plaintiff's own allegations …"  (*Id*.)

5      The Court will first address the impact of the *Gonzalez* Settlement on the amount in
6   controversy, before addressing whether the amount in controversy is satisfied.

       A.  The <u>*Gonzalez* Settlement</u>

8      Plaintiff argues the *Gonzalez* Settlement reduces the amount in controversy in the instant
9   class action because Defendant improperly included employees with released claims from the
10  *Gonzalez* Settlement in its amount in controversy calculations.  (ECF No. 15 at 12–15.)
11  However, Defendant argues, and the Court agrees, that these employees from the *Gonzalez*
12  Settlement did not release their claims until after Defendant removed the instant action and "[i]t is
13  well settled that post filing developments do not defeat jurisdiction if the jurisdiction was
14  properly invoked at the time of filing."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928
15  (9th Cir. 2019) (quoting *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013)) (internal
16  quotation marks omitted)

17     Specifically, the parties fully executed the *Gonzalez* Settlement on April 26, 2023.  (ECF
18  No. 18. at 4.)  Plaintiff then initiated this class action on June 23, 2023 in state court, addressing
19  similar claims against Defendant to those raised in the *Gonzalez* action.  (ECF No. 1-1.)
20  Defendant removed this action on September 14, 2023, calculating the amount in controversy
21  based on the allegations in Plaintiff's Complaint at the time of removal.  (ECF No. 1.)  The Los
22  Angeles Superior Court then approved the *Gonzalez* Settlement on February 1, 2024, releasing
23  some claims against Defendant.  (ECF No. 18 at 4.)

24      While final approval of the *Gonzalez* Settlement may ultimately impact the amount of
25  damages Plaintiff may recover in the instant action, it does not impact this Court's jurisdiction
26  analysis as it occurred after removal.  *See LaCross v. Knight Transp., Inc.*, 775 F.3d 1200, 1203
27  (9th Cir. 2015) ("Plaintiffs are conflating the amount in controversy with the amount of damages
28  ultimately recoverable."); *see also Visendi*, 733 F.3d at 868 (finding once CAFA jurisdiction is

1  properly invoked at the time of removal, post-filing developments do not defeat the federal
2  court's jurisdiction).  Plaintiff's Complaint alleges a class period beginning in June 2019 to
3  present day, and it was proper for Defendant to rely on this class period when calculating the
4  amount in controversy.  *Arias*, 936 F.3d at 928.  Thus, the Court finds the *Gonzalez* Settlement is
5  not relevant to calculating the amount in controversy in this action.

                B.        Amount in Controversy

7        In its Notice of Removal, Defendant asserts the $5,000,000.00 amount in controversy
8  requirement set by CAFA is satisfied because the amount in controversy for Plaintiff's first,
9  second, third, fourth, sixth, and seventh causes of action, along with Defendant's calculation for
10  attorneys' fees is at least $30,107,747.20. (ECF No. 1.)  Plaintiff disputes the amount in
11  controversy has been met, arguing Defendant's calculations are unreasonable, unsupported, and
12  inflated. (ECF No. 15.)  The Court will address whether Defendant has shown by a
13  preponderance of the evidence that amount in controversy for Plaintiff's claims exceeds
14  $5,000,000.00.

15                            *i.   Unpaid Minimum Wage and Overtime Claims*

16        In Plaintiff's first and second causes of action, Plaintiff alleges Defendant did not
17  consistently pay Plaintiff and other class members minimum wage or overtime pay. (ECF No. 1-
18  1 at 15–16.)  In the Notice of Removal, Defendant argues Plaintiff does not "provide any details
19  how allegedly undercompensated her and the proposed class [are], or how many hours per day or
20  week she and other putative class members allegedly worked without compensation." (ECF No.
21  1 at 12.)  Defendant estimates the amount in controversy for Plaintiff's first and second causes of
22  action for failure to pay minimum wages and failure to pay overtime wages to be $1,002,543.33
23  [$16.62/hour × 106,710 shifts × .5 hours × 1/5 shifts × 4 years],[1] and $1,503,815.00 [$16.62/hour
24  × 1.5 OT Premium × 36,645 overtime shifts × 1/5 shifts × 4 years],[2] respectively.  (ECF No. 16 at

---

[1]     Defendant's Chief Human Resources Officer declared that, during the one-year period from January 1, 2023, to December 31, 2023, Defendant's non-exempt employees worked 36,645 shifts that were eight hours or longer. (ECF No. 1-4 at 3.)

[2]     Defendant's Chief Human Resources Officer declared that, during the one-year period from January 1, 2023, to December 31, 2023, Defendant's non-exempt employees worked

1  17.) Defendant argues that this calculation is based on a reasonably conservative "20% violation rate of one half hour of unpaid straight time and one half hour of unpaid overtime per workweek." (*Id*.) Plaintiff disagrees with Defendant's calculations and argues they are based on speculation and conjecture and a 10% violation rate is a more reasonable estimate for Plaintiff's minimum wage and overtime claims. (ECF No. 18 at 6.)

As an initial matter, "Defendant is not 'required to comb through its records to identify and calculate the exact frequency of violations.'" *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV1906963CJCRAOX, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (quoting *Lopez v. Aerotek, Inc.,* 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015)). While a 100% violation rate has been considered unreasonable when a complaint alleges a "pattern and practice" of violations, *Ibarra*, 775 F.3d at 1199, district courts in the Ninth Circuit have frequently approved a 20% violation rate where a plaintiff, as Plaintiff does in the instant case, alleges a "pattern and practice" of defendant's failing to provide minimum wage and overtime compensation. *See Salazar v. PODS Enterprises, LLC*, No. 1:19-CV-260-MWF, 2019 WL 2023726, at *3–4 (C.D. Cal. 2019); *Kastler v. Oh My Green, Inc.*, No. 1:19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019); *see also* (ECF No. 1-1 at 7) ("Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages.").

Moreover, the Court finds Defendant's assumed 20% violation rate is reasonable because "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Arias*, 936 F.3d at 927 (quoting *Ibarra*, 775 F.3d at 1199). In *Arias*, the court found defendant's calculations reasonable because they were based on "personnel and payroll data" and assumptions of "the frequency of violations of the sort alleged in the complaint." *Id*. at 926. In the instant case, Defendant also bases its calculations on personal and pay roll data as well as allegations from Plaintiff's Complaint that Defendant "maintained a systematic, company-wide policy and practice of failing to pay

---

106,710 shifts. (ECF No. 1-4 at 3.)

1  employees for all hours worked." (ECF No. 1-1 at 4.)

2  Thus, the Court agrees with Defendant that a 20% violation rate is a reasonable estimate
3  for calculating the amount in controversy for Plaintiff's first and second causes of action and will
4  include $2,506,359.33 toward the $5,000,000.00 amount in controversy requirement.

### ii. Meal and Rest Period Violation Claims

6  In Plaintiff's third and fourth causes of action, Plaintiff alleges Defendant did not provide
7  Plaintiff and other class members with requisite meal and rest breaks. (ECF No. 1-1 at 18–19.)
8  Plaintiff contests Defendant's assumption that all punitive class members missed 40%[3] of their
9  requisite meal and rest periods, a violation resulting in a $8,020,346.64 amount in controversy.
10 (ECF No. 15 at 17.) Defendant argues its 40% violation rate is reasonable due to Plaintiff's
11 allegation that Defendant "regularly failed" to provide employees with meal and rest breaks.
12 (ECF No. 16 at 18.) The Court agrees with Defendant.

13 "Whether the plaintiff's complaint places limits on the claims alleged is relevant to the
14 reasonableness of the defendant's assumed violation rate." *Diaz v. Ardagh Metal Beverage USA,*
15 *Inc.*, No. 222CV00100TLNKJN, 2022 WL 3368537, at *5 (E.D. Cal. Aug. 15, 2022). However,
16 where a complaint offers no guidance as to the frequency of violations, this Court has previously
17 held a 20% to 60% violation rate for meal and rest period violations to be reasonable. *See*
18 *Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-cv-00863-TLN-JDP, 2022 WL 597158, at *4
19 (E.D. Cal. Feb. 28, 2022); *Sanchez v. Abbott Labs.*, No. 2:20-cv-01436-TLN-AC, 2021 WL
20 2679057, at *4–5 (E.D. Cal. June 30, 2021). "Plaintiff cannot simply sit silent and take refuge in
21 the fact that it is Defendant's burden to establish the grounds for federal jurisdiction." *Patel v.*
22 *Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014). This is because a plaintiff is
23 in the best position to know how often they experienced a meal or rest period violation. *Id.*
24 Moreover, in the instant case, Plaintiff has not provided the Court with any evidence that a 40%
25 violation rate would be unreasonable.

26 Thus, based on the allegations in Plaintiff's Complaint and a lack of any contrary evidence

---

[3] A 40% violation rate equates to two missed meal period and two missed rest periods per work week, assuming a five-day work week.

7

from Plaintiff, the Court finds a 40% violation rate — a median between 20% and 60% — is a reasonable estimate for calculating the amount in controversy for Plaintiff's third and fourth causes of action, and will include $8,020,346.64 [ 16.62/hour × 2 meal period premium payments × 2 rest period premium payments × 120,643 workweeks] toward the $5,000,000.00 amount in controversy requirement.

### iii.  Additional Calculations

Plaintiff also disputes Defendant's calculations related to Plaintiff's final pay claims, wage statement claims, and Defendant's calculations for attorneys' fees.  (ECF No. 15 at 22–26.)  However, Defendant shows by a preponderance of the evidence that at least $10,526,706.00 is in controversy with Plaintiff's first, second, third, and fourth causes of action.  Therefore, the Court finds the minimum amount in controversy requirement under CAFA is satisfied and the Court declines to address the additional calculations.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion to Remand. Within thirty (30) days of the electronic filing date of this Order, the parties are ORDERED to file a joint status report with the Court with proposed dates for filing Plaintiff's motion for class certification.  The Court will then issue an amended scheduling order.

IT IS SO ORDERED.

Date: July 15, 2024

_____
Troy L. Nunley
United States District Judge